**People of the State of Illinois, Plaintiff-Appellee, v. Ulysses Callahan, Defendant-Appellant.**

**Gen. No. 52,710.**

First District, First Division.

December 16, 1968.

Paul B. Ballin, Jr., of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Robert Rosch, and Charles E. Whelan, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant was found guilty of aggravated assault. He was admitted to probation for two years, with the first six months to be served in the House of Correction. On appeal, defendant contends he was not proved guilty beyond a reasonable doubt, and that a jail sentence was not warranted because there was no physical injury.

Defendant was charged with aggravated assault in violation of chapter 38, section 12–2(a)(6) of the Illinois Revised Statutes. Section 12–1 provides:

"(a) A person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery."

Section 12–2 provides:

"(a) A person commits an aggravated assault, when, in committing an assault, he:

"...

"(6) Knows the individual assaulted to be a peace officer, or a person summoned and directed by him, while such officer is engaged in the execution of any of his official duties."

The evidence shows that on June 12, 1967, the complaining witness, Gary Rodeghier, a Chicago police officer, was in the Criminal Court Building, 2600 South California Avenue, Chicago, attending court in the execution of his official duties. During a court recess, and while the officer was standing in a hallway conversing with Edward Genson, an attorney, the defendant, Ulysses Callahan, walked up to him, pushed him up against the wall and said, "You white M–F, I am going to kill you when this case is over." Four other police officers grabbed defendant and subdued him. Officer Rodeghier testified he asked the defendant "for what purpose he did this. And he said, with all the prejudice going on in the city was the reason he was being arrested. I said, 'I didn't arrest you.' He said, 'Well, I have had a few drinks and I want to apologize.' " In the opinion of the officer, defendant was intoxicated. On cross-examination, the officer denied that he had had a controversy with defendant that morning in a parking lot adjoining the court building. He said that he had never seen Callahan before the occurrence in the hallway.

Edward Genson testified in corroboration, and that he did not know of any provocation or of the parking lot controversy.

Defendant testified that on the morning of June 12, he had had an argument with Officer Rodeghier in the parking lot area adjacent to the court building, during which the police officer was very abusive and pulled his pistol and cocked it. He further testified that later, while he was standing in a hallway outside of a courtroom, the officer approached him with a blackjack and threatened him saying, "You are under arrest." Defendant denied that he threatened or pushed the officer. He further stated that he was not intoxicated and had not been drinking before the incident.

James Smith, a witness for defendant, corroborated defendant's testimony as to the parking lot incident. He was present during the hallway occurrence but did not see exactly what happened. The officer asked him (Smith) if his buddy had "cooled off yet." He did not see defendant strike the officer, but he did see the officer approach Callahan.

In rebuttal, the police officer and Genson both testified they had never seen James Smith before.

 Initially we agree with defendant's contentions that it is the duty of the court to resolve the facts and evidence on a theory of innocence rather than guilt, if that can be done; in criminal cases it is the duty of the reviewing court to review the evidence, and if there is not sufficient evidence to remove any reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed; the facts and circumstances proved must be sufficient to establish the guilt of the person charged with a moral certainty and to the exclusion of every other hypothesis.

██ However, the application of the foregoing pronouncements here does not require a finding that defend-

ant was not proved guilty beyond a reasonable doubt. In a nonjury trial it is the duty of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony, and unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt, the finding of the court will not be disturbed. In this case the trial judge chose to believe the witnesses for the State and, in view of the evidence presented, we are unable to say that he erred in so doing.

■■ Defendant's conduct and his threat to kill the complaining witness, known to defendant as a police officer who was then engaged in his official duties, was sufficient to place the officer "in reasonable apprehension of receiving a battery." Defendant's serious threat and his acts of a violent nature could reasonably have been expected to result in injury to the complaining officer if the four other police officers had failed to promptly subdue the defendant. We conclude the evidence was adequate to prove that defendant was guilty beyond a reasonable doubt of an "aggravated assault," in violation of section 12–2(a)(6).

Considered next is defendant's contention that the condition of probation which directed defendant to spend the first six months of the probation period in the House of Correction was extreme punishment for the misconduct involved here, where there was no physical injury.

After defendant was found guilty of aggravated assault, the State showed in aggravation that in 1945 defendant was convicted of armed robbery. In mitigation defendant testified that he was 44 years old and was married, with a family. He had been working for Libby, McNeill & Libby for fourteen years and had no difficulty with the law during the past fifteen years. In granting probation the court remarked, "I am going to give him a lot of time. It is difficult enough for the police officers to take abuse on the streets, which they do constantly; but when they

354

have to take it in the Criminal Court Building, half of the time when they are here on their day off, this is going too far."

The State argues a period of incarceration was warranted because defendant was guilty of a violent attack on an officer of the law, and of an exhibition of blatant contempt for the law and the dignity of the courts, and of conduct tending to disturb the right of society to peace and security.

■ We agree with the remarks of the trial judge and the argument of the State as to the seriousness of defendant's conduct. However, we are not persuaded that the interests of society will be best served here by defendant spending the first six months of his probation period in the House of Correction. Accepting as true defendant's statements made in mitigation, that he has worked for Libby, McNeill & Libby for a period of fourteen years and that he is still so employed (so stated by his attorney in this court during oral argument), we believe the probation order should be modified so as to eliminate the imprisonment part of the order.

Therefore, the finding of guilty of the offense of aggravated assault is affirmed. The order of probation is amended by reversing and eliminating that part of the order which directs the imprisonment of defendant in the House of Correction for six months and, as amended, the order of probation is affirmed.

Judgment modified and affirmed.

BURMAN, P. J. and ADESKO, J., concur.